## Case No. 3,482.

### CUNNINGHAM et al. v. HALL.

[1 Spr. 404;[1] 21 Law Rep. 18.]

District Court, D. Massachusetts. April Term, 1858.[2]

PERFORMANCE OF CONTRACT.

1. Where one contracts to make and finish a specific article, as for instance, a ship, he impliedly undertakes that the thing shall be reasonably fit for use.

2. If she be not so fit, the contractor will not be exonerated, although the unfitness was occasioned by secret defects in the materials used.

3. Where the contract was for the making and delivery of a ship, and the ship was made and delivered, and immediately sailed on a foreign voyage, and it was found upon examination, at one of the ports at which she arrived in the course of that voyage, eight months after her delivery, that the planks on her bottom were very much split, and she had leaked much in the course of the voyage, and had met with no disaster or strain sufficient to account for the damaged state of the planks; it was *held* that this was sufficient evidence that the vessel was improperly built, and not reasonably fit for use.

[In admiralty. Libel in personam by J. H. Cunningham and others against Samuel Hall to recover damages for a breach of contract.]

F. C. Loring, for libellants.

R. Choate and C. P. Curtis, Jr., for respondent.

SPRAGUE, District Judge. This libel is brought by the owners of the ship Flying Childers, to recover the expense of repairs and demurrage at Whampoa, on her first voyage. Although perfectly new, this vessel leaked so badly, that on her arrival in China she was put into dock and her copper stripped off, when it was found that several of the planks upon her bottom were so badly split that it was necessary to take them out and put in new, and her seams were generally so slack, that it was necessary to re-caulk them.

After the respondent had commenced the building of this ship on his own account, the libellants made him an offer for her when completed, which was accepted. This offer and acceptance were in writing. A question has been made, as to the true construction of this contract. The respondent insists that he engaged only for the exercise of professional skill and labor. The libellants contend that it was a contract for the manufacture and delivery of a fabric. The price to be paid was a round sum. The offer was for the ship, and Mr. Hall, in accepting the proposal, agreed that "it should be right in all respects." It was a contract for a completed fabric. And the rules of law relating to the exercise of professional skill,

---

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

[2] [Reversed in·Case No. 3,481.]

are not applicable. What, then, was the legal obligation of Mr. Hall? The case of Shepherd v. Pybus, 3 Man. & G. 868, is not distinguishable from this. It was there decided that the ship must be reasonably fit for use, and the same rule is laid down in other cases.

It is attempted to distinguish those cases from the present, on the ground that the articles were there ordered for some special purpose. But that only required an extended application of the rule. The maker may be bound to add peculiar qualities for a special purpose, but this by no means shows that he is not bound to furnish the common qualities for the usual purposes for which the vessel is destined. On the contrary, it shows that she is to be fit for her purpose, whether that be common or peculiar. The rule of law applicable to this case is, that the fabric shall be reasonably fit for use, and not merely that the maker will use his best skill to make it so. He warrants the accomplishment of that result.

The libellants admit that this ship was well built and satisfactory in all respects, except in the particulars complained of. She was launched in November, sailed in December, immediately began to leak, and in July it was necessary to take her into dock and strip the bottom, when it was found in the condition before stated; and the complaint made is that some of the planks used were originally defective, and that the caulking was not sufficient. There is no contradiction as to the state of the bottom at Whampoa, though the witnesses differ somewhat as to details. [The testimony of Cowper, the shipwright, is entitled to more weight, as it was originally taken to be used by the respondent, and is not materially affected by the testimony of his subsequent declarations.] [3]

This being the state of the vessel, how is it to be accounted for? Several causes are assigned. One is, that hard pine planks are liable to defects, which cannot be discovered on careful examination, such as heartshakes and run-rounds, which do not come to the surface, and which are opened by the nails used in coppering. The evidence shows that this is not infrequent, and the suggestion would be entitled to weight, if the rule of law applicable was that for which the respondent contends; but if the fact were proved, I think the respondent must nevertheless be liable. The other alleged causes are heaving out, touching bottom at Boston and San Francisco, and gales of wind.

The only evidence of her taking ground in Boston is an incidental statement by the mate in his deposition, taken two years ago. It was not drawn out by the respondent, nor did he cross-examine respecting it, and no expert has been inquired of as to its effect; it is evident that the respondent did not consider that a sufficient cause, and the same

may be said of the touching at San Francisco. There is no proof that this could account for the state of the bottom at Whampoa, and the leak began long before she arrived at San Francisco. As to gales at sea, the master and mate testify strongly that she never strained, and that she encountered no weather sufficient to strain her, that the leak was steady and gradually increased. The log-book does not corroborate their testimony as to the gradual increase of the leak, but does as to its occurring immediately after sailing. Pumping is not always mentioned in the log-book, and the account given of the weather is much stronger. But it is to be remembered that the log-book and protest are the usual proof of loss where claims are made on insurers, and it is to be expected that the accounts of gales and seas will therein be stated, at least as strongly as the truth will admit. It does not mention that any accident or damage happened, or that the ship strained, or carried away even a spun-yarn. I cannot, therefore, set aside the testimony of the master and mate, especially as, at Whampoa, no sign of straining appeared on the bottom, and the copper was so smooth and unwrinkled that it was put on again, which is conclusive evidence that she had not been strained.

As to the heaving out. The vessel was not coppered on the stocks, and it was known to the respondent that the copper was to be put on after she should be launched. It is argued that this was an unfair use of the vessel, and subjected her to unusual tests. But Mr. Hall himself put on the copper. The vessel was hove down, under his eye, and with his knowledge, and no complaint was made by him, at the time, that she was to be hove out, or of the manner in which it was done, and at that time the copper could not have been put on without it. There is no proof that she was strained in the process, and the weight of testimony is that, if carefully done, a good vessel ought not to be strained in heaving out, and that splits in the bottom plank could not be caused by it, and that a ship ought to be able to bear it. Railways and dry docks are inventions of recent years, and even now are not to be found in many places where vessels are built and repaired.

I am of opinion that the condition of the bottom planks and seams at Whampoa is not accounted for by any cause suggested in defence, and must be attributed to original defects, and therefore this vessel was not, when delivered to the libellants, reasonably fit for use. The libellants must prevail. The case must be sent to an assessor, unless the parties agree upon the amount of damages.

Upon appeal to the circuit court [the decree herein was reversed and] this action was dismissed for want of jurisdiction. [Case No. 3,-481.]

CUNNINGHAM (HAMILTON v.). See Case No. 5,978.

---

[3] [From 21 Law Rep. 18.]